MIGNOT, et ux,
*Petitioners,*
*v.*
DEPARTMENT OF ENVIRONMENTAL
QUALITY, et al,
*Respondent.*

(No. 06-SW-SWR-76-228, CA 16108)

613 P2d 86

Gene L. Brown, Grants Pass, argued the cause for petitioners. With him on the brief were Dale L. Smith and Brown, Hughes, Bird & Lane, Grants Pass.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

Roberts, J., dissenting.

## GILLETTE, P. J.

This is a case of judicial review of a final order of the Department of Environmental Quality (DEQ). Petitioners, owners of a mobile home park in Josephine County, were found by a hearings officer of the DEQ to have violated ORS 164.785(2) by depositing certain material on their property near certain drainage ways which would eventually empty into Gilbert Creek and the Rogue River. The DEQ adopted the opinion and order of the hearings officer, and the petitioners sought review. We reverse.

The hearings officer found, and the evidence establishes, that petitioners were responsible for the placing of somewhere between two and six hundred tires on their property within a drainage way. Most of the tires were removed from the drainage way by June 30, 1976, and were stacked on the property next to the drainage way. Tires are also to be found in various other areas of the property. The referee further found,

> "When abandoned tires become laden with standing water from rain or other sources, they may provide an environment for mosquito larvae. Abandoned tires may harbor rodents."

The hearings officer also found that there was other solid debris scattered about the property.

The hearings officer and the DEQ concluded,

> "[Petitioners] are chargeable with knowledge of large quantities of tires and general debris on their property. They failed to remove such. As a matter of law this constituted a violation of ORS 164.785(2) on or about June 27, 1976."

Based upon this finding, the petitioners were assessed a civil penalty of $500.

ORS 164.785(2) provides,

> "(2) It is unlawful for any person to place or cause to be placed any polluting substance listed in this section into any road, street, alley, lane, lot, field, meadow or common. It is unlawful for an owner

thereof to knowingly permit any polluting substances to remain in any of the places described in this subsection to the injury of the health or to the annoyance of any citizen of this state. Every 24 hours after conviction for violation of this subsection during which the violator permits the polluting substances to remain is an additional offense against this subsection."

The "polluting substance" referred to in subsection (2) is defined by subsection (1) of that same section:

"(1) It is unlawful for any person, including a person in the possession or control of any land, to discard any *dead animal carcass or part thereof, excrement, putrid, nauseous, noisome, decaying, deleterious or offensive substance* into or in any other manner befoul, pollute or impair the quality of any spring, river, brook, creek, branch, well, irrigation drainage ditch, irrigation ditch, cistern or pond of water." (Emphasis supplied).

The question is, do tires constitute substances within the class described in subsection (1) of ORS 164.785?

We hold that they do not. An examination of the items set out in ORS 164.785(1) reveals that they are representative of a class which includes and is limited to materials, whether organic or otherwise, which may decay or degrade in such a way as to produce nauseous, foul smelling or otherwise chemically offensive conditions in the environment. This is not true of tires found on the petitioners' property, at least under the evidence presented in this case. Moreover, we think the statute speaks to materials offensive *in themselves.* Thus, the fact that water may collect in the tires and that mosquitoes may flourish in the water is irrelevant. While it may be true that placing of the tires on the property constitutes violation of some other law or regulation of the DEQ there is no violation of ORS 164.875(2) shown by this evidence.

The order of the Department of Environmental Quality is reversed.

[754]

**ROBERTS, J.,** dissenting.

I dissent from the majority opinion because I believe the language of the statute, "deleterious or offensive substance" is applicable to this situation where "between two and six hundred tires [were] on [petitioners'] property within a drainage way." The American Heritage Dictionary (New College Edition 1979), at 349, defines "deleterious" as "having a harmful effect." Synonyms of "deleterious" are "damaging, detrimental, hurtful, injurious, mischievous, nocent, nocuous, * * * ." Webster's Collegiate Thesaurus 210 (1976). The presence of two to six hundred tires in a drainage way are, in my opinion, all of those. And further, the majority opinion overlooks the second portion of ORS 164.785(1) which states, "* * * or in any other manner befoul, pollute or impair the quality of any * * * drainage ditch * * *." The referee's finding that abandoned tires may harbor rodents and provide an environment for mosquito larvae is sufficient to find petitioners in violation of the portion of the statute quoted above.

For these reasons I respectfully dissent.